**Alexander B. Trueblood**, Cal. Bar No. 150897
Email: Abtlaw@Earthlink.net
TRUEBLOOD LAW FIRM
10940 Wilshire Boulevard, Suite 1600
Los Angeles, California 90024
Telephone (310) 443-4139; Fax (310) 234-4023

**Robert Stempler**, Cal. Bar No. 160299
Email: StemplerLaw@Gmail.com
CONSUMER AND TAX LAW OFFICE OF
ROBERT STEMPLER, APLC
3400 Inland Empire Boulevard, Suite 101
Ontario, California 91764-5577
Telephone (909) 972-6841; Fax (909) 433-2132

Co-Counsel for Plaintiff CESAR AMBRIZ

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CESAR AMBRIZ, | Case Number CV-07-5423-JFW (SSx) |
| Plaintiff, | NOTICE OF MOTION AND MOTION TO RE-OPEN THE ACTION AND FOR AWARD OF ATTORNEY'S FEES AND COSTS, PURSUANT TO SETTLEMENT AGREEMENT BETWEEN PLAINTIFF AND ALL NAMED DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES |
| vs. | |
| ARROW FINANCIAL SERVICES, LLC; et al.; | |
| Defendants. | |
| | Time: 1:30 p.m. Date: May 19, 2008 Place: Courtroom 16 (Spring St.) Judicial Ofcr: Hon. John F. Walter |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on the date and time noted in the caption above, or as soon thereafter as the matter may be heard, in Courtroom 16 of this court, inside of the Los Angeles Federal Courthouse, addressed at 312 N. Spring St., Los Angeles, CA 90012, the plaintiff will move this Court to re-open the action and for an award of costs and reasonable attorney's fees against the named defendants, pursuant to the settlement between the parties.

1    This motion is based on this notice of motion, on the attached memorandum

2    of points and authorities, on the declarations and evidence in support, on the on

3    the proposed order granting the motion, and on the pleadings filed in this matter.

4    This motion is made following a conference of counsel pursuant to Local

5    Rule 7-3, which took place on April 7, 2008.

6

7                                              Respectfully Submitted,

8

9    By:      ____/s_____

10                                            Robert Stempler

11   Attorneys for Plaintiff
     KIRK MILLER

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I. INTRODUCTION

On August 20, 2007, plaintiff Cesar Ambriz brought this action for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., and the Rosenthal Fair Debt Collection Practices Act, Civil Code § 1788 et seq. The case settled as to all defendants in March, 2008. By this motion, plaintiff seeks recovery of his attorneys fees and costs against defendants, pursuant to the terms of the settlement agreement, which provides that Ambriz is the prevailing party and that the Court shall determine the fees and costs award.

This litigation has lasted about seven months. The case proceeded for 5 1/2 months before any defendant made a settlement offer. Plaintiff made a settlement offer of $14,000 plus attorneys fees and costs on November 12, 2007 to defendant Eskanos & Adler. However, Eskanos & Adler ignored it, making no counteroffer. Defendant Arrow Financial Services also never made an offer. Finally, defendants made a low-ball offer in February, 2008 of $2,000 plus costs, which plaintiff rejected. Then the parties conducted an unsuccessful mediation, and in March, 2008, the case finally settled after defendants substantially increased their offer. Defendants agreed to pay plaintiff $9,500 in damages, plus his reasonable attorneys fees and costs to be determined by the court. The final settlement was quite close to plaintiff's November 12, 2007 offer, which defendants had simply ignored.

Plaintiff has incurred $32,480 in attorneys fees, including time spent on this application. The $32,480 represents plaintiff's "lodestar," i.e. the reasonable hourly rates of counsel multiplied by the reasonable number of hours spent on the case. It is supported by detailed time records. Plaintiff's counsel's hourly rates are reasonable in the legal community, and have been approved by many courts, including this District Court.

Under long-established law, the "lodestar" is presumed to constitute a reasonable fee award. Plaintiff respectfully requests that the court award the lodestar amount, plus $1,128.33 in costs/expenses, for a total award of $33,608.33.

1

## II. STATEMENT OF FACTS

A.    Summary of FDCPA and RFDCPA Violations

Plaintiff brought this action under the Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.) and the Rosenthal Fair Debt  Collection Practices Act (Civil Code § 1788 et seq.) to remedy statutory violations by the defendant debt collectors, made in the course of attempting to collect a merchant credit card account from the plaintiff.  The defendants are the debt collector Arrow Financial Services, LLC, and its collection lawyers, the law firm of Eskanos & Adler.

Cesar Ambriz purchased a car stereo and opened a credit card account in the amount of $5,500 with the stereo dealer, to finance his purchase.  Defendant Arrow Financial Services, a professional debt collector, claims that it purchased the account from the original creditor, after Ambriz defaulted on his payments.  Arrow then began its collection efforts, which involved multiple violations of the FDCPA and Rosenthal Act.

Arrow wrongfully inflated the debt, by combining the debt of Ambriz's sister, who had purchased a car stereo on credit at the same dealer in a separate transaction, with the debt of Ambriz, which almost tripled the debt to over $15,000.  Complaint, ¶ 2.  Arrow then sought to collect the entire amount from Cesar Ambriz.  Ambriz repeatedly advised Arrow that it had combined the two accounts, and that he was only responsible for his own loan.  However, Arrow ignored Ambriz, and sought to make him pay for his sister's obligation.

Arrow sued Ambriz in the Los Angeles Superior Court in 2003.  Arrow sought to collect Ambriz's sister's debt in the complaint, although she was not a defendant. Complaint, ¶ 2. This was a misrepresentation of the amount of the debt, in violation of 15 U.S.C. § 1692e and the Rosenthal Act, Civil Code § 1788.17.

Arrow did not serve the complaint according to law.  The process server claims to have left the complaint with Ambriz's brother Jesus Ambriz, who was only 12 years old at the time. Complaint, ¶ 3. The relevant service statute requires

2

1   that the recipient of the summons and complaint be at least 18 years old. Code of

2   Civil Procedure § 415.20(b).  Cesar Ambriz did not live at the service address, his

3   parent's home, at the time, although he did accept mail there.  Because the

4   summons, if it was delivered at all, was delivered to a minor, there was no personal

5   jurisdiction over Ambriz, who never received actual notice of the lawsuit from his

6   parent's household.  It is unclear whether the process server even dropped off

7   papers to anyone on that day, since Jesus Ambriz denies that he was served.

8         Ambriz did not know he had been sued.  After its faulty service, Arrow

9   proceeded to take a default judgment against Ambriz, for both his debt and the debt

10  of his sister, in the amount of $16,777.  Complaint, ¶ 3.  Arrow then tried to collect

11  from Ambriz, who learned for the first time that a judgment had been taken against

12  him.  Ambriz and his wife repeatedly informed Arrow's lawyers, defendant

13  Eskanos & Adler, that they had not been served, that Jesus Ambriz was a minor,

14  and that the judgment included the debt of Ambriz's sister, for which he was not

15  responsible. Complaint, ¶ 4.  Eskanos & Adler ignored this notice that their

16  judgment was void, and that the debt had been improperly combined with the much

17  larger debt of the sister. The Eskanos & Adler representatives told Ambriz and his

18  wife that they had a judgment and "you owe what it says." Defendants stated that

19  the defective service on plaintiff's minor brother "didn't matter," that "it's your

20  problem you didn't show up in court," and "if you're not going to pay it, we'll

21  terminate this call right now."    Complaint, ¶ 5.

22        Eskanos & Adler then proceeded with collection of the judgment through

23  wage garnishments and bank levies. Complaint, ¶ 6. This was illegal under the

24  Rosenthal Act, which prohibits enforcing a judgment while knowing that it is void

25  for lack of personal jurisdiction.  Civil Code § 1788.15.

26        Plaintiff Ambriz was forced to hire counsel, who provided defendants with

27  proof that the summons had been improperly served on a minor, and that plaintiff's

28  sister's debt had been improperly added together with plaintiff's alleged debt.

3

1   Defendants still refused to set aside the void judgment.  Eskanos & Adler falsely

2   stated that defendants were conducting an ongoing "investigation."  In fact, during

3   the period of their so-called investigation, defendants did nothing, and initiated a

4   wage garnishment. Complaint, ¶ 8. Under the pretext of "investigating" facts which

5   were easily ascertainable in minutes, defendants delayed for five months, hoping

6   that plaintiff would run out of funds to pay his attorneys.  Id.

7         Plaintiff's attorneys were finally forced to draft and file a motion to set aside

8   the default and default judgment in state court.  Defendants did not oppose the

9   motion. The state court ruled that the judgment was void for lack of personal

10  jurisdiction, quashed all outstanding writs and levies, and ordered defendants to pay

11  plaintiff back the money they had taken under authority of the bogus judgment.

12  This action followed.

13  B.    Procedural History of This Action

14        Eskanos & Adler vigorously litigated this federal case from the date of its

15  filing on August 20, 2007, through these motion proceedings. From August 20,

16  2007 until  February 1, 2008, there were no offers to settle from either defendant.

17  Trueblood Decl., ¶ 14.  Plaintiff made a settlement offer of $14,000 plus attorneys

18  fees and costs on November 12, 2007 to defendant Eskanos & Adler. Trueblood

19  Decl., Exh. 6.   However, Eskanos & Adler ignored it, making no counteroffer.

20  Trueblood Decl., ¶ 14. Arrow Financial, represented by the same counsel as

21  Eskanos & Adler, also made no offer.  Id.

22        Several months of litigation later, on February 1, 2008, the defendants jointly

23  made their first offer to plaintiff, for $2,000 plus attorneys fees and costs.

24  Trueblood Decl., ¶ 14, Exh. 7.  Plaintiff rejected the offer because his actual

25  damages were substantially higher than $2,000, having incurred approximately

26  $8,000 in attorneys fees in the underlying action.  The parties then conducted a

27  mediation in February, 2008, which failed when defendants refused to offer more

28  than $6,000 *total*, which was *less* than their previous offer of $2,000 plus fees and

4

1  costs. Trueblood Decl., ¶ 14.  The litigation continued.   Finally, in March, 2008,

2  defendants agreed to pay $9,500 in damages, plus plaintiff's reasonable attorneys

3  fees and costs, and the matter settled.  Trueblood Decl., ¶ 16, Exh. 8. This amount

4  was quite similar to plaintiff's November, 2007 settlement offer, which defendants

5  had ignored five months earlier.  Trueblood Decl., Exh. 6.

6      Having reached an agreement on damages, and that defendants would pay

7  plaintiff's reasonable fees and costs, plaintiff then attempted to settle the attorneys

8  fees and costs issue.  Plaintiff demanded approximately $26,000, supported by

9  attorney time records.  Trueblood Decl., ¶ 15, Exh. 8. On March 26, 2008,

10  defendants offered only $7,500, and plaintiff then was forced to bring this

11  application, or else go uncompensated for substantial legal work in the case.

12  Trueblood Decl., ¶ 15, Exh. 8.

13                    III.  ARGUMENT

14  A.    Plaintiff Ambriz Is The Prevailing Party Entitled To Attorneys Fees

15      The complaint contains claims for violations of the Fair Debt Collection

16  Practices Act and the Rosenthal Act, including a prayer for attorneys fees and costs

17  under those claims.  Complaint, ¶¶ 26, 36.   The FDCPA provides that the

18  prevailing plaintiff may recover:  "[I]n the case of any successful action to enforce

19  the foregoing liability, the costs of the action, together with a reasonable attorney's

20  fee as determined by the court."  15 U.S.C. 1692k(a)(3).  The Rosenthal Act also

21  provides for recovery of attorneys fees to the prevailing plaintiff.  Civil Code §

22  1730(c).

23      Plaintiff is undoubtedly the prevailing party in the action.  Under the terms of

24  the settlement, defendants agreed that plaintiff is the prevailing party for the

25  purposes of this motion, entitled to his reasonable attorneys fees and costs.

26  Trueblood Decl., Exh. 8, ¶ 3.  The only remaining issue is the amount of fees to be

27  fixed by the Court.

28

1  B.      The Lodestar Adjustment Method Should Be Used to Calculate Fees

2          Once a party has established that he is entitled to attorneys fees, the district

3  court determines what fee is "reasonable."  Hensley v. Eckerhart, 461 U.S. 424,

4  433 (1983). The presumptive measure of a reasonable fee, is the amount known as

5  the "lodestar." The "lodestar" is derived by multiplying the number of hours the

6  prevailing party reasonably expended on the litigation by a reasonable hourly rate.

7  United States v. $60,201 Currency, 291 F.Supp.2d 1126 (C.D. Cal. 2003), citing

8  Caudle v. Bristow, 224 F. 3d 1014, 1028 (9th Cir. 2000), citing Morales v. City of

9  San Rafael, 96 F.3d 359, 363 (9th Cir. 1996).

10         The lodestar figure provides a presumptively accurate measure of reasonable

11  attorneys fees.  Harris v. Marhoefer, 24 F.3d 16, 18 (9th Cir. 1994). The court may

12  increase or decrease the lodestar amount in exceptional cases. Blum v. Stenson, 465

13  U.S. 886, 898-901; Harris, supra, 24 F.3d at 18; United States v. $60,201.00 U.S.

14  Currency, supra, 291 F.2d at 1129, citing Queseda v. Thomason, 850 F.2d 537, 539

15  (9th Cir. 1988).[1]

16         The district court does not directly consider the multi-factor test developed in

17  Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69-70 (9th Cir. 1975).  Rather, the

18  first step is to determine the lodestar amount, which subsumes many of the Kerr

19  factors, i.e. the novelty and complexity of the issues, special skill and experience of

20  counsel, quality of representation, and results obtained.  Blum, supra, 465 U.S. at

21  898-900; Clark v. City of Los Angeles, 803 F.2d 987, 990-91 (9th Cir. 1986).  Next,

22  the court looks at the Kerr factors that have not been subsumed in the lodestar

23  calculation to determine whether the case presents the exceptional circumstances

24  necessary to increase or decrease the lodestar.  Clark, 803 F.2d at 991.

25

26

27

28
_____
[1] See also Yahoo, Inc. v. Net Games, 2004 U.S. Dist. Lexis 14739 (N.D. Cal. 2004),
citing Pennsylvania v. Delaware Valley Citizens Council for Clean Air, 478 U.S. 546,
565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986); United States v. 4432 Mastercases of
Cigarettes, 2004 U.S. Dist. Lexis 12119 (C.D. Cal. 2004).

1    The lodestar in this case is $32,480, consisting of $17,325 incurred by Mr.

2  Trueblood, and $15,155 incurred by Mr. Stempler. See Trueblood Declaration, ¶ 8;

3  Stempler Decl., ¶ 16.  The requested lodestar amount incorporates the prevailing

4  hourly rates for comparable lawyers in the community, times the hours reasonably

5  spent by plaintiff's lawyers on the case.

6    The lodestar amount is supported by the detailed time records of plaintiff's

7  lawyers.  Stempler Decl., Exh. 1; Trueblood Decl., Exh. 1.

8  C.    Plaintiff's Counsel's Hourly Rates Are Reasonable

9    The lodestar should be calculated using prevailing hourly rates for

10  comparable legal services in the community.  Blum, 465 U.S. at 895 & n.11.  The

11  proper rate to utilize is that which a lawyer of comparable skill, experience, and

12  reputation would command in the relevant community.  Id.

13    An attorney's claimed hourly rate can be justified by many methods, and

14  expert evidence is not required.  See United Steelworkers v. Phelps Dodgy, 896

15  F.2d 403, 407 (9th Cir. 1990)(the prevailing market rate is determined by the

16  declarations of claimant's attorneys, other attorneys, and orders from other courts

17  confirming counsel's rates).

18    Defendant requests $495/hour for Mr. Trueblood's time, and $350 per hour

19  for Mr. Stempler's time.  These rates are reasonable by community standards.  Mr.

20  Trueblood is a 17 year consumer lawyer who has long experience involving

21  consumer finance issues, including FDCPA, an area that relatively few plaintiff's

22  lawyers specialize in. Trueblood Decl., ¶¶ 1-7.  Similarly, Mr. Stempler is also

23  highly experienced in FDCPA actions.  Stempler, Decl., ¶¶ 2-5.

24    Mr. Trueblood's rates are commensurate with his contemporaries.

25  Trueblood Decl., ¶ 10.  His rates have been repeatedly approved by the courts. In

26  July, 2006, Judge Margaret Morrow of the U.S. District Court, Central District of

27  California, issued a ruling in a contested fee application in the case of Willoughby

28  v. DT Credit Corp., approving Mr. Trueblood's 2005 rate of $400 per hour as

7

1  reasonable in a Rees-Levering Automobile Sales Finance Act case involving illegal
2  collection of deficiency balances. Trueblood Decl., Exh. 5. In July, 2007, the Los
3  Angeles Superior Court approved Mr. Trueblood's hourly rate of $495 in a similar
4  action.  Trueblood Decl., Exh. 4. In 2006, the Riverside Superior Court approved
5  Mr. Trueblood's then rate of $400-475 in defending a $6,000 auto deficiency claim
6  in an individual case, and awarded $45,000 in fees. Trueblood Decl., Exh. 3.

7        Mr. Stempler's rates have also been repeatedly approved by the courts.
8  Stempler Decl., ¶¶ 6-14.  In 2006, the District Court approved Stempler's hourly
9  rate of $381 after a lodestar enhancement. Stempler Decl., ¶ 13. Stempler's $350
10  rate for 2008 is quite reasonable in light of the fact that he was approved at similar
11  rates two years ago.

12  D.    Plaintiff Is Entitled To Compensation For This Fee Application

13        It is well-established that time spent on a contested fee application is
14  compensable to the prevailing party in the litigation.  Clark, 803 F.2d at 992; In re
15  Nucorp Energy, Inc., 764 F.2d 655 (9th Cir.1985) (citing cases); Harris v.
16  McCarthy, 790 F.2d 753, 758-59 (9th Cir.1986).  Otherwise, a victory can be
17  turned into a defeat, merely by the opposing party's choice to vigorously litigate the
18  fee application.

19        In this matter, plaintiff's counsel made a reasonable attempt to settle the fee
20  issue, prior to bringing the motion.  Trueblood Decl., ¶ 15, Exh. 8. Plaintiffs'
21  counsel offered to settle for $26,027, and provided backup billing printouts. Id.
22  Defendant's only offer was for $7,500, leaving plaintiff the choice of either
23  bringing this motion, or going uncompensated for almost $20,000  in  legal work
24  and expenses. Id. This application was therefore necessary work in the case.

25  E.    Plaintiff Is Entitled To His Costs and Expenses

26        Plaintiff has incurred $1,128.33 in litigation costs and expenses, and requests
27  that this amount be added to the fee award.  Trueblood Decl., ¶ 9; Stempler Decl., ¶
28  17.

1

### III.  <u>CONCLUSION</u>

2        For all of the foregoing reasons, plaintiff respectfully requests an award of

3    $32,480 in attorneys fees, and $1,128.33 in costs, for a total recovery of

4    $33,608.33.

5

6    Dated:  April 18, 2008                    Respectfully Submitted,

7

8                                              By:          /s/

9                                              Robert Stempler

10                                             Attorneys for Plaintiff
                                               CESAR AMBRIZ

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28